**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

SHARON PHILLIPS,

   Plaintiff,                           CASE NO.:

-VS-

FCA US LLC,

   Defendant.

_____/

## COMPLAINT

1.    Plaintiff alleges violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2.    The TCPA was enacted to prevent companies like FCA US LLC d/b/a CHRYSLER CAPITAL LLC ("Chrysler Capital"), from invading American citizens' privacy and prevent abusive "robo-calls."

3.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." Mims v. Arrow Fin. Servs., LLC, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

5.    According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

6.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.    Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin.*

*Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

8.    The alleged violations described herein occurred in Coweta County, Georgia. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.    Plaintiff is a natural person, residing in Newnan, Coweta County, Georgia.

10.    Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11.    Defendant is a Limited Liability Company with a principal place of business located at 1000 Chrysler Drive, CIMS: 485-14-78, Auburn Hills, Michigan 48326 and its registered agent is The Corporation Company, 328 Alexander Street, Suite 10, Cobb, Mariettta, Georgia 30060.

12.    Plaintiff is the regular user and carrier of the cellular telephone number at issue, (770) *** - 9033, and was the called party and recipient of Defendant's hereinafter described calls.

3

13.    In or about March of 2016, Plaintiff began receiving calls to her aforementioned cellular telephone from Defendant seeking to recover an alleged debt.

14.    Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (855) 563-5635, and when that number is called, a pre-recorded message answers "Thank you for calling Chrysler Capital.  Please be aware that calls are monitored and recorded for quality assurance purposes.  For English press 1.  Para Español, oprima numero dos."

15.    Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because when she answered a call from the Defendant she would hear an extended pause before a representative would come on the line.

16.    Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

17.    None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

18.    Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

19.    Defendant attempted to offer Plaintiff the use of Defendant's services in the refinance, modification, short sale or foreclosure of an alleged debt.

20.    On or about May 12, 2016, Plaintiff received a call from the Defendant, met with an extended pause, eventually was connected to a live representative of Defendant, and informed that agent/representative of Defendant that she thought the outstanding balance was covered by insurance, and demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

21.    During the aforementioned phone conversation on or about May 12, 2016 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to

Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24.     Additionally, on or about May 15, 2016, due to continued calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, was eventually connected to a live agent/representative of Defendant named "Miranda", and informed the "Miranda" that she had already spoken with an agent/representative of the Defendant, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number to which "Miranda" responded by asking Plaintiff to hold so that she could notate Plaintiff's account.

25.     A few days later, on or about May 19, 2016, due to continued calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, was eventually

connected to a live agent/representative of Defendant, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

26.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

27.    On at least three (3) separate occasions, Plaintiff has answered a call from Defendant, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to her aforementioned cellular telephone number.  Her principal reason for answering these calls and making these demands of Chrysler Capital was the cumulative injury and annoyance she suffered from the calls placed by Chrysler Capital.  These injuries are further described in paragraphs 31 through 37 herein.

28.    Each of the Plaintiff's requests for the harassment to end were ignored.

29.    On at least ten (10) separate occasions, Plaintiff received an automated telephone call to her aforementioned cellular telephone from Defendant, which left a voicemail including the following identical pre-recorded message:

>    "Hello. This is Chrysler Capital. Please contact our servicing
>    department using our toll free number at 1-855-563-5635. Again, our

toll free number is 1-855-563-5635. You may also access your account online using the my account feature at www.myaccount.chryslercapital.com. Chrysler Capital appreciates your prompt response. This is a recording."

30.   From about May 12, 2016 through the filing of this Complaint, Defendant has placed over seventy-five (75) actionable calls to Plaintiff's aforementioned cellular telephone number without her express consent (please see attached **Exhibit "A"** representing a non-exclusive call log of forty-six (46) calls from May 15, 2016 through July 11, 2016).

31.   Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

32.   From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

33.   From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from the Defendant's call.

34.     From each and every call placed without express consent by the Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time.  For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop.  Even for unanswered calls, the Plaintiff had to waste time to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

35.     Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.  For calls that were answered, the Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, the Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

36.     Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone resulted in the injury of unnecessary expenditure of the Plaintiff's cell phone's battery power.

37.    Each and every call placed without express consent by the Defendant to the Plaintiff's cell phone resulted in the injury of a trespass to the Plaintiff's chattel, namely her cellular phone and her cellular phone services.

38.    As a cumulative result of Defendant's ceaseless barrage of unlawful calls to Plaintiff's aforementioned cellular telephone number, the Plaintiff suffered the injuries of annoyance, anxiety, intimidation, and emotional distress.

39.    Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

40.    Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

41.    Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

42.    Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

43.    Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

44.   Defendant violated the TCPA with respect to the Plaintiff.

45.   Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

46.   Plaintiff incorporates and realleges paragraphs one (1) through forty-five (45) above as fully set forth herein.

47.   Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

48.   Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem

just and proper.

Respectfully Submitted,


*s/Octavio "Tav" Gomez*

Octavio Gomez, Esquire
Georgia Bar No.:  617963
Morgan & Morgan, Tampa,
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
TGomez@ForThePeople.com
LCrouch@ForThePeople.com
*Attorney for Plaintiff*